489 P.2d 1008

STATE of Utah, Plaintiff and Respondent,

v.

Harold HARRIS, Defendant and Appellant.

· No. 12497.

Supreme Court of Utah.

Oct. 12, 1971.

H. Don Sharp, Ogden, for appellant.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, Chief Asst. Atty. Gen., Larry V. Lunt, Asst. Atty. Gen., Salt Lake City, for respondent.

CALLISTER, Chief Justice.

Defendant appeals from his conviction, upon a jury verdict, for the crimes of robbery, rape and kidnapping in the second degree.

Defendant was accused of participating along with a man named Burney in the aforementioned crimes. Approximately at 1:30 a. m., on December 29, 1970, while the victim was stopped at a traffic signal in Roy, Utah, a man, subsequently identified as Burney, forced his way at gun point into her automobile. He ordered her to drive down a side road. She observed an old, white Ford Thunderbird automobile, which she had previously noticed, following. her vehicle. When the victim failed to turn off on a side road as ordered, Burney placed the gun at her head and ordered her to drive to a housing area and to stop the car. The victim was then blindfolded and led to another vehicle, which another man was operating. The three then departed from the area. During the ride she was ordered to remove a fifty-dollar bill from her wallet and give it to Burney. Burney also expressed an interest in the remaining seven or eight dollars in the wallet, but the other man ordered that the victim be allowed to keep the remaining money. The victim was concealed on the back seat during the ride.

The vehicle was stopped and after the area was checked for potential observers, the victim was led into a building, which was subsequently discovered to be a unit in the Travelodge Motel in Ogden, Utah. The victim was undressed and raped by the two men. She was then sent to the bathroom with her clothing and permitted to remove the blindfold.

The victim observed a sanitary cover on the toilet seat, upon which was printed the Travelodge emblem; she placed this wrapper in her purse. One man approached the bathroom door to give her her blouse. She observed approximately a quarter of his face and a gold shirt and brown suede jacket which he was wearing.

The victim was again blindfolded and led back to the vehicle. During the return trip to her automobile, the victim's blindfold loosened; she observed the interior of the vehicle and noticed clothing hung on the left side in the back seat. The victim

was left in the vicinity of her car; she immediately went to a nearby service station, and the police were contacted.

The Ogden police took the victim to the Travelodge Motel in Ogden; the Thunderbird automobile was located in a parking lot adjoining the motel. The victim identified the vehicle. Approximately at 7:15 a. m., the police entered the motel unit and placed defendant and Burney under arrest, whereupon they were fully informed of their rights. The two men were attired solely in their shorts at the time of arrest. Officer Clemons testified that he assisted defendant, who was handcuffed, in dressing. Defendant indicated which were his clothes, and the officer draped a gold shirt and jacket over defendant. This apparel was subsequently entered in evidence.

Approximately an hour after the arrest, seven men, including the two arrested, appeared in a lineup. Prior to the lineup, the victim had described the clothing of her attackers, one had a smooth-finished leather coat, and one had a brown suede coat. The arrested men appeared in their coats, which resembled the victim's description, in the lineup. The victim was admonished by the police that she should make a positive identification. She, therefore, identified Burney but not defendant. The victim did inform her father and Officer Dyer that she remembered the clothing worn by the defendant. According to the record the victim identified defendant at the preliminary hearing.

Defense counsel filed a motion to suppress the identification testimony of the victim, which upon hearing was denied.

The motion was renewed during the course of the trial and was again denied.

At the trial, the victim testified that she observed the coat, shirt, and the right side of the face of the man who handed the blouse to her through the partially opened bathroom door. The coat was brown suede, and the shirt was gold and had a big collar. The man had long sideburns, which extended below his ear lobes. His hair was dark brown, long and brushed back. She observed the texture of his skin, which was rough, and he had marks where he had shaven. She did not observe his full face, or his nose or eyes. The victim testified that at the preliminary hearing she observed that defendant's hair, hairline, sideburns and facial complexion were of the same type as those of the man she saw in the motel.

A friend of defendant testified that he had observed the defendant dressed in a gold shirt and brown suede jacket earlier in the evening, on the night of the crime. He further testified that the coat and shirt in evidence appeared to be exactly the same as the ones he had seen.

On appeal defendant asserts that the trial court erred in denying his motion to

suppress the victim's in-court identification of his physical characteristics.

Defendant urges that the lineup was illegal because he was denied the presence of counsel. He cites United States v. Wade [1] and Gilbert v. State of California [2] as authority to support his argument that he was denied the right to counsel at a critical stage of the proceedings.

In State v. McGee,[3] this court cited the *Wade* and *Gilbert* decisions and stated that a courtroom identification, in fact the fruit of a suspect pretrial identification, was inadmissible, unless the prosecution established by clear and convincing evidence that the in-court identification was based upon observations of the suspect other than the lineup identification.

■ In the instant case, the victim has never specifically identified defendant as the man but has merely testified as to the similarity of characteristics of her assailant and the defendant. Under these circumstances, the applicability of the "identification cases" appears doubtful. Nevertheless, the instant record clearly sustains the conclusion that her testimony concerning defendant was based upon observations from a source independent of the lineup.[4]

■ The determination of the trial court may also be sustained on the alternate ground that defendant waived the right to have counsel present at the lineup.

Officer Dyer testified that he advised defendant of his right to have an attorney present at the lineup, and defendant responded that he didn't need a lawyer. Defendant testified at the hearing on the motion to suppress; he denied that he had stated that he didn't want an attorney. Defendant qualified his assertion by stating that either he didn't remember or Dyer made a misstatement.

■ In State v. Harrison,[5] the court observed that the State has the burden of showing that defendant knowingly and intelligently waived his right to have counsel present during the lineup, and that such a question is factual. Where the evidence, and inferences therefrom, conflict, the trial court's judgment as to the credibility of the witnesses determines the issue.

Defendant further contends the manner in which the lineup was conducted denied him due process of law. Defendant asserts

1. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967).

2. 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

3. 24 Utah 2d 396, 400, 473 P.2d 388 (1970).

4. State v. Vasquez, 22 Utah 2d 277, 279, 451 P.2d 786 (1969).

5. 81 N.M. 324, 466 P.2d 890, 895 (1970).

that he was the only person in the lineup attired in a brown suede jacket and that the victim's attention was directed towards him because of the coat.

The law is well established that judged by the totality of the circumstances, the conduct of identification procedures may be so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law.[6]

Defendant has cited no authority to support the assertion that it is a denial of due process of law to require a suspect to appear in a lineup in the apparel in which he was arrested; in fact, the authority is to the contrary.[7]

Finally, defendant asserts that the trial court erred by its refusal to submit to the jury requested instructions concerning lesser included offenses. On the rape charge, defendant requested an instruction on assault with an intent to commit rape, and simple assault. On the kidnapping charge, there was a request for an instruction on false imprisonment. On the robbery charge, defendant requested an instruction on being an accessory after the fact.

\* \* \* where the question raised relates to the refusal to submit included offenses, it is our duty to survey the whole evidence and the inferences naturally to be deduced therefrom to see whether there is any reasonable basis therein which would support a conviction of the lesser offenses. \* \* \*[8]

In the instant case, under any reasonable view of the evidence, the defendant must be found either guilty of the greater offense or not guilty. Under such circumstances, instructions as to lesser offenses would only confuse.[9] The trial court's refusal to instruct on the lesser offenses was not erroneous.

The judgment of the trial court is affirmed.

TUCKETT, HENRIOD, and CROCKETT, JJ., concur.

ELLETT, J., concurs in the result.

6. Stovall v. Denno, 388 U.S. 293 (1967), 87 S.Ct. 1967, 18 L.Ed.2d 1199; Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).

7. United States v. Ball (U.S.C.A. 6th, 1967), 381 F.2d 702; Bradley v. Commonwealth, Ky., 439 S.W.2d 61 (1969); Schott v. People, Colo., 482 P.2d 101 (1971); People v. Floyd, 1 Cal.3d 694, 83 Cal.Rptr. 608, 464 P.2d 64 (1970).

8. State v. Gillian, 23 Utah 2d 372, 376, 463 P.2d 811, 814 (1970).

9. State v. Mitchell, 3 Utah 2d 70, 74, 278 P.2d 618 (1955).